UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAZMIN LILIANA ELIAS OBREGON,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS, et al.,<br><br>Respondents. | Case No. 17-cv-01463-WHO<br><br>**ORDER REGARDING TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

This case presents an important issue for the periodic bond hearings required by *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) for immigration detainees—under what circumstances does an Immigration Judge commit constitutional error by continuing to detain a non-citizen an additional six months for "dangerousness?" I cannot reach that decision here because the record is incomplete: petitioner Yazmin Liliana Elias Obregon chose to cut short her November 10, 2016 *Rodriguez* hearing and not to emphasize prior to the hearing's termination that she has a release plan that addresses her alcoholism and rebuts the government's showing that she is currently dangerous because of her previous convictions for DUI and driving without a license. The motion for a temporary restraining order is DENIED. In light of the significant liberty interest at stake and the reason periodic bond hearings are required by the Constitution, I write to emphasize the burden ICE has to keep a non-citizen for prolonged periods and the potential strength of this petitioner's case.

## PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the Department of Homeland Security ("DHS") pending civil removal proceedings against her in San Francisco Immigration Court. She seeks a writ of habeas corpus to secure her release, arguing that at a November, 2016 bond hearing DHS

failed to present clear and convincing evidence that she poses a present danger to justify her continued detention, in violation of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2008), *Rodriguez*, and the Fifth Amendment's Due Process Clause. First Amended Petition ("FAP") (Dkt. No. 14). She contends that, as a matter of law, DHS failed to show by clear and convincing evidence that she poses a danger to the community and that the Immigration Judge's ("IJ") decision that she poses a present danger was legally erroneous. She also argues that the Immigration Court denied her due process by making her choose between postponing her bond hearing by a month before she could finish presenting evidence in her favor and receiving an immediate bond determination from the court. She has moved for a temporary restraining order to secure her immediate release. Dkt. No. 9.

The government opposes the motion, arguing that petitioner cannot demonstrate that the IJ's decision was legally erroneous and that this court does not otherwise have jurisdiction to review the IJ's discretionary decision. It further contends that the IJ did not deny petitioner due process by giving her the option to receive an immediate bond determination or to continue her bond hearing by a month at which time she would be able to finish presenting evidence in support of her release. Finally, it argues that even if petitioner is entitled to some relief, she should not be released, as the proper relief for an inadequate *Rodriguez* hearing is a new hearing. I heard argument on petitioner's motion for a temporary restraining order on April 3, 2017.

**FACTUAL BACKGROUND**

Petitioner is a 34-year old Mexican national who was brought to the United States at the age of four. FAP ¶15. She has lived in the United States for over 30 years and has three U.S. citizen children, whose ages are 17, 14, and 13 years old. *Id.*

Petitioner is a victim of significant domestic abuse. She developed substance abuse problems as a result. *Id.* ¶16. The father of her three children, Mr. Garcia, raped her, beat her, and forced her to take methamphetamine in the hopes of causing a miscarriage. *Id.* As a result of this abuse, she developed an addiction to meth and was eventually arrested and convicted of possession of methamphetamine in 2005. *Id.* Following this conviction, she completed a 100-day residential drug treatment program and was able to overcome her addiction. *Id.* She has had no

2

further problems with methamphetamine since completing the program. *Id.*

Although petitioner was able eventually to escape the abusive relationship with Mr. Garcia, she entered a second abusive relationship with Mr. De Leon. *Id.* ¶17. Mr. De Leon was an alcoholic and was also physically violent with her. *Id.* She coped with Mr. De Leon's abuse by self-medicating with alcohol. *Id.* And she drove under the influence as a result. *Id.*

Petitioner received her first DUI in 2006: she was pulled over by police for making a wrong turn and was cited, but not arrested, for a DUI. *Id.* ¶18. She was pulled over again in 2009: on this occasion she was cited with a DUI, arrested, and spent two days in jail. *Id.* Following her 2009 arrest she was ordered to attend DUI classes, which cost $300 per month. *Id.* ¶19. While she was still attending the DUI classes, petitioner suffered a serious beating from Mr. De Leon. *Id.* As a result of this beating, petitioner was bedridden for a week – she missed her DUI class, lost her job, making her unable to continue paying for the classes, and stopped going. *Id.* In 2011 petitioner was arrested for violating her probation by failing to complete her DUI classes. *Id.* ¶20. She was placed in ICE custody and remained in detention for a week before being released on $7,000 bond.

In addition to petitioner's DUI convictions, between 2006 and 2011 she also received approximately four convictions for driving without a license. *See* Pet. Ex. X at 66. Despite getting a driver's permit at the age of 17, she never took the driver test and never acquired a valid license. *Id.* She was cited for driving with a suspended license in 2006, 2009, 2010, and 2011. *Id.* at 66-72.

Following her release from custody in 2011, petitioner left Mr. De Leon, stopped drinking alcohol for a year and focused on providing for her children. *Id.* In 2014 she began a relationship with her current partner, Mr. Aguilar. *Id.* ¶21. Mr. Aguilar does not drink and is not physically or emotionally abusive toward her. *Id.*

In October of 2015, petitioner went to a birthday party for her sister. She had a few drinks. *Id.* ¶22. Mr. Aguilar drove her to and from the birthday party. *Id.* But after they got home, instead of parking Mr. Aguilar left the car double-parked and walked down the street to get tacos. *Id.* Petitioner became impatient, slid into the driver's seat, and honked the horn to get Mr.

Aguilar's attention. *Id.* This got the attention of police officers instead, who came by to investigate the excessive honking. *Id.*

When the police arrived, petitioner attempted to park the car so that it was not in the middle of the road. *Id.* The police cited her for a DUI and for driving without a license, but did not arrest her. *Id.* A criminal judge determined that petitioner was not a danger to the community and allowed her to enter a rehabilitation program designed for survivors of domestic abuse at Athena House. *Id.* ¶23. Petitioner completed the 3-month program in February, 2016 and then returned home to live with Mr. Aguilar. *Id.* ¶24.

As a condition of her probation, petitioner was required to take daily drug and alcohol tests. *Id.* A week after her release from the Athena House, petitioner's daily test came back inconclusive because she had consumed too much water beforehand. *Id.* This inconclusive test constituted a violation of her probation and she was arrested for two days. *Id.* She went before a criminal judge on February 26, 2016, who indicated she would be released to continue her outpatient rehabilitation. But instead, she was taken into ICE custody, where she remains today. *Id.* ¶25.

As a result of the Ninth Circuit's decision in *Rodriguez*, individuals in extended civil immigration detention are entitled to receive a bond hearing every six months at which DHS has the burden to show by clear and convincing evidence that continued detention is appropriate either because the individual is a flight risk or poses a danger to the community. Petitioner received her *Rodriguez* bond hearing on September 8, 2016. Bond was denied. Pet. Ex. X. She moved for a new bond hearing on the basis that her counsel at her initial bond hearing and first *Rodriguez* hearing was incompetent. Her motion was granted.

The new hearing occurred on November 10, 2016. *Id.* It began with DHS cross-examining petitioner to establish her continuing dangerousness by proving her past convictions. After the government rested, petitioner's testimony started with the circumstances that led to her meth addiction in 2005. It never reached the present or the reasons why less restrictive alternatives are available and sufficient to support of her release. While she planned to demonstrate her rehabilitation and that she was no longer facing the abuse that had contributed to

4

her substance abuse problems, the hearing was cut short. The IJ indicated that he had no more time for the hearing that day and would have to continue the hearing to December 13, 2016, the first date that the attorney for DHS and he were available. *Id.*

Faced with a month-long continuance, petitioner asked that the IJ issue a decision on the spot. *Id.* The IJ did so. He declined to release her, concluding that although petitioner had clearly had a very hard life, her criminal history indicated she was a danger to the community. *Id.* On December 9, 2016 the IJ issued a written memorandum opinion explaining that DHS had demonstrated petitioner posed a danger, noting her three DUI convictions, highlighting that she had at least four citations for driving without a license, and stating that although petitioner was participating in a treatment program, she had previously participated in such programs but had always relapsed. Pet. Ex. E.

Petitioner appealed her denial of bond to the Board of Immigration Appeals ("BIA"). Pet. Ex. F. On March 23, 2017, counsel for petitioner received BIA's decision dismissing the appeal. FAP ¶32. The BIA upheld the IJ's decision that petitioner is a danger to the community.

## LEGAL STANDARD

Under section 8 U.S.C. § 1226(a) the Attorney General is empowered to arrest and detain noncitizens awaiting removal proceedings. 8 U.S.C. § 1226(a). The Attorney General has discretion to continue to detain such individuals or release them on bond or conditional parole and has delegated this authority to the IJs. *Id.*; 8 C.F.R. §§ 1003.19, 1236.1 (2006). The BIA has held that a noncitizen should only be kept in continued detention or required to post bond after a "finding that he is a threat to national security, or that he is a poor bail risk." *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976).

Petitioner is not a national security risk. To determine whether she is a poor bail risk, in *Matter of Guerra*, the BIA outlined a number of factors that IJs may consider when assessing whether an alien is dangerous or a flight risk: "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitled the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in

court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). For the purposes of assessing dangerousness, the primary factor is the alien's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id.*

If the IJ's initial decision is to deny bond, non-citizens must be afforded an individualized bond hearing every six months to assess the continued appropriateness of their detention. *See Rodriguez*, 804 F.3d at 1089. At this bond hearing, DHS bears the burden of proving "by clear and convincing evidence that the detainee is a flight risk or a danger to the community to justify the denial of bond." *Id.* at 1065. There is no question in this case that petitioner is not a flight risk.

The jurisdiction of federal courts to review immigration court bond determinations is limited in part by 8 U.S.C. § 1226(e), which provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Despite this limitation, the Supreme Court has held that section 1226(e) does not limit a court's habeas jurisdiction or prohibit a federal court from hearing a habeas petition "challenging[ing] the statutory framework that permits his detention without bail" or bringing "constitutional challenge[s]." *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003). The Ninth Circuit has held that federal courts may entertain habeas claims alleging constitutional and legal error in the discretionary process. *Singh v. Holder*, 638 F.3d 1196, 1202 (2011).

To succeed on a motion for a temporary restraining order, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**DISCUSSION**

Petitioner argues that a temporary restraining order is appropriate because she is likely to succeed on her claims that (1) her detention violates due process because DHS failed to demonstrate by clear and convincing evidence that she is a danger to the community and (2) the IJ violated her statutory and constitutional rights to a full and fair hearing at which she could present evidence. She further argues that absent a temporary restraining order she will suffer irreparable harm because she will be forced to remain in DHS custody with no constitutional justification and that the balance of harms and public interest weigh in her favor because the government has no legal interest in continuing to unlawfully detain her.

**I. WHETHER IJ'S DETERMINATION THAT PETITIONER IS DANGEROUS WAS LEGALLY ERRONEOUS**

**A. Petitioner's Position**

Petitioner contends that she is entitled to habeas relief because, as a matter of law, DHS failed to prove by "clear and convincing evidence" that she is a continuing danger to the community and that she was therefore not afforded an adequate *Rodriguez* hearing in violation of her due process rights. At her bond hearing, she submitted declarations and presented testimony that she is a victim of domestic abuse and developed substance abuse problems as a result. She showed that since 2014 she had been in a non-abusive relationship, was committed to her substance abuse treatment, and that her 2015 arrest for DUI was an anomaly. She admitted that she had never acquired a valid driver's license and stated in a declaration that she appreciated the seriousness of that mistake. She explained that she was planning to rely on public transportation and rides from Mr. Aguilar to get to and from work if she were released, and would no longer drive without a license.

Petitioner argues that because DHS focused on her past convictions and did not respond directly to her new evidence of rehabilitation and her supportive, non-abusive boyfriend, it failed as a matter of law to show, by clear and convincing evidence, that she is a present danger to the community. She argues that the IJ therefore erred, as a matter of law, in denying her bond. She asserts that the IJ should have acknowledged that she is more likely to succeed in her current

7

rehabilitation efforts because she now has a supportive partner, and that her 2015 DUI conviction was an anomaly. She asserts that the IJ's general explanation that DUIs are dangerous was inadequate and did not address the specific circumstances of her case.

Petitioner relies primarily on two cases in which federal courts concluded that IJs had committed legal error in relying exclusively on past convictions to assess present dangerousness. In *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008), the court concluded that DHS had failed to show that a man who had been in immigration custody for five years was a present danger where it pointed only to his past convictions which included a decades old conviction for voluntary manslaughter, a seven-year-old conviction for DUI, and a five-year-old conviction for theft based on the detainee's theft of his own fiancée's engagement ring. *Id.* The court reasoned that "[w]here Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate." *Id.* In *Mau v. Chertoff*, 562 F.Supp. 2d 1107, 1116 (C.D. Cal. 2008) the court concluded that DHS had failed to demonstrate that a man who had been in immigration detention for three years was a present danger where it relied on three past convictions for DUI which were four to six years old. The court concluded "[u]nder the circumstances, the IJ's reliance on two misdemeanor convictions for DUI and one felony conviction for DUI as the basis for the finding of present dangerousness was an error of law . . ." *Id.* at 1118.

Petitioner asserts that the IJ similarly relied exclusively on her past convictions and did not take her current circumstances into account. As a result, she asserts that the IJ erred as a matter of law and that she is entitled to habeas relief.

Petitioner also contends that because *Rodriguez* laid out that "longer detention requires more robust procedural protections" and that "a noncitizen detained for one or more years is entitled to greater solicitude than a non-citizen detained for six months," DHS is required at later *Rodriguez* hearing to provide additional evidence of *current* dangerousness to meet its burden of proof. *See Guevara*, 20 I&N Dec. at 244 ("The legal concept of a 'burden of proof' requires that the party upon whom the burden rests carry such burden by presenting evidence."). She argues

8

that because DHS did not provide new evidence regarding her current dangerousness it failed, as a matter of law, to meet the "clear and convincing evidence" burden of proof.

### B. The Government's Position

The government responds that petitioner's first claim for relief is not a true constitutional claim but is instead a challenge to the IJ's discretionary determination regarding her dangerousness and that this court therefore lacks jurisdiction to hear it. While it is true that this court does not have jurisdiction to review discretionary decisions by the IJ, the Ninth Circuit has confirmed that the court may review errors of law and constitutional violations under its normal habeas jurisdiction. *See Singh*, 638 F.3d at 1202. Loss of liberty always implicates constitutional concerns, and I cannot determine whether petitioner states a true habeas claim without reviewing its substance.

The government also argues that petitioner's claim for habeas relief fails because the IJ did not make a legal error in concluding that petitioner was a present danger. It notes that the IJ did not rely solely on petitioner's past DUIs but also considered the circumstances of those convictions, petitioner's continuing struggle with alcoholism, petitioner's previous violations of IJ orders, and petitioner's various convictions for driving without a license in assessing whether she was a danger to the community.

The government asserts that the facts here are similar to *Gomez Ochoa v. Lynch*, No. CV-16-01646-PHX-JJT (BSB), 2017 WL 913597, at *8 (D. Ariz. Feb. 8, 2017), in which a district court considered whether an IJ had erred as a matter of law in denying bond where the detainee had two DUI convictions within the last two years, one of which he incurred while he was enrolled in DUI classes. The district court concluded that "[t]he IJ did not violate due process by concluding that DUI is a serious offense, and by considering Petitioner's criminal history of DUI, and some of the circumstances related to those convictions, in finding him a danger to the community." *Id.* The government distinguishes the decisions in *Judulang* and *Mau* by arguing that the convictions in those cases were 5-20 years and 4-6 years old respectively, whereas in this case, petitioner had a DUI conviction that was approximately one year old and that had occurred only several months before she was placed in ICE detention.

9

Further, the government notes that nothing in *Rodriguez* requires DHS to specifically present new evidence at subsequent *Rodriguez* hearings in order to meet its burden of proof. Instead, *Rodriguez* requires IJs to "consider the length of time for which a non-citizen has already been detained" when assessing whether DHS has carried its burden. *See Rodriguez*, 804 F.3d at 1089.

**C.     Analysis**

The Due Process Clause prohibits the government from depriving any "person . . . of . . . liberty . . . without due process of law." The Supreme Court has held that due process prohibits the government from holding noncitizens indefinitely in civil immigration detention without justification. *Zadvydas v. Davis*, 533 U.S. 678 (2001). Although the government has valid interests in detaining individuals that pose a danger to the community, the Supreme Court has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691.

In the context of criminal pretrial detention pursuant to the Bail Reform Act, the Court has concluded that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat." *United States v. Salerno*, 481 U.S. 739 at 751 (1987). The Ninth Circuit has concluded that this standard also governs dangerousness determinations in civil immigration bond hearings as "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Singh*, 683 F.3d at 1203.

In assessing dangerousness, the BIA has indicated that IJs may consider the alien's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The Executive Office for Immigration Review does not have any guidelines for Immigration Judges further outlining how to apply the factors laid out by *Matter of Guerra*. Dkt. No. 21. But clearly, one place to look for guidance is cases decided under the Bail Reform Act. While there are certain statutory differences between bond hearings under the Bail Reform Act and the bond hearings that

take place before an IJ, in both contexts, Due Process requires the government to demonstrate, by clear and convincing evidence what kind of conduct meets this standard. Decades of precedent in the context of criminal bond hearings offer IJ's the appropriate guidance in assessing whether the government has met its burden of proving dangerousness by "clear and convincing evidence," limiting detention only to "specially dangerous individuals" as the Court described in *Zadvydas*. Another place to look for guidance is how the court that handled the underlying crime, which makes determinations on dangerousness and the availability of less restrictive alternatives to detention on a daily basis, handled the case at bar or others in similar circumstances.

Case law demonstrates that establishing dangerousness by "clear and convincing evidence" is a high burden and must be demonstrated in fact, not "in theory." *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (affirming the district court's conclusion that, although the government had demonstrated the defendant was a Mafia Boss and that "in theory a Mafia Boss was an intimidating and highly dangerous character" it had failed to show that "this Boss posed a significant danger"). As relevant here, a history of DUI violations can meet that high standard. *Castaneda v. Aitken*, No. 15-cv-01635-MEJ , 2015 WL 38882755, * (N.D. Cal. Jun. 23, 2015) (upholding IJ's decision that detainee was danger to the community where he had committed DUIs in 2010 and 2013, which included swerving so badly he was crossing into oncoming traffic; letters of support from family and friends were not convincing where petitioner's supporters were not able to prevent him "from driving on public roads while severely impaired by alcohol and drugs" in 2010 and 2013); *Hernandez v. Lynch*, No. 15-cv-1717, 2016 WL 3406157, *4 (S.D. Cal. Jun. 20, 2016) (IJ was within his discretion to conclude that DUI convictions from 2001, 2004, and 2012 demonstrated that detainee was a danger to the community, despite attempts at rehabilitation; petitioner had committed other crimes and was a flight risk as well).

At the same time, courts must consider the remoteness of the DUI and intervening events that might undermine a finding of dangerousness. *See Judulang*, 562 F. Supp. 2d at 1127 (evidence of 20-year-old conviction for manslaughter and seven year-old conviction for DUI was not sufficient, as a matter of law, to establish dangerousness); *Mau*, 562 F.Supp. 2d at 1116 (government did not establish dangerousness, as a matter of law, by pointing only to past DUI

11

convictions that were four to six years old). And they "ultimately must decide whether any restrictions short of detention" could be implemented. *Rodriguez*, 804 F.3d at 1088.

At the hearing in November, the IJ did not rely exclusively on petitioner's past convictions in assessing dangerousness. In his written order, he found that petitioner had a fairly long criminal history including three DUIs and four convictions for driving with a suspended license. Pet. Ex. E at 3. He noted that her most recent DUI took place in 2015. *Id.* He acknowledged petitioner's evidence that she was now in a stable relationship and had the support of her community and friends. *Id.* However, he also noted that petitioner has struggled with addiction and alcohol abuse for many years and, despite attending three rehabilitation programs in the past 11 years, has continued to relapse. *Id.* He acknowledged petitioner's testimony that her 2015 DUI was an anomaly but concluded that this explanation was not convincing given petitioner's history of DUIs. *Id.* Finally, he noted that petitioner was granted bond in the amount of $7,000 in 2011, but had continued to violate U.S. law after her release from detention, incurring her 2015 DUI and receiving an additional citation for driving without a license. *Id.*

All this is true. But it is not clear that the IJ considered all the evidence in assessing petitioner's present dangerousness. She notes that the IJ's written decision indicates that he misunderstood some of the evidence presented. For example, the IJ stated that petitioner had attended in-patient treatment three times in the last 11 years but had always relapsed, when in fact she had successfully overcome an addiction to methamphetamine. He indicated that she had testified that she had an ongoing problem with substance abuse and intended to return to in-patient treatment if she was released, but she testified that she intended to return to out-patient treatment. This mistake may have caused the IJ to overestimate the severity of petitioner's continuing struggle with substance abuse – something that any addict will continue to struggle with, to varying degrees, throughout her life. The IJ also concluded that the 2015 DUI did not appear to be an anomaly, given petitioner's past DUIs, but he did not engage with any of the details of that DUI (parking while intoxicated) or to acknowledge that the facts underlying the 2015 DUI differed substantially from her past convictions. He did not address in any way her history as a victim in abusive relationships or that she was no longer in an abusive relationship and, had for the first

12

time, received substance abuse treatment designed specifically for victims of domestic abuse. This all demonstrates that the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness. And little attention was given to petitioner's plan for out-patient treatment and other measures to justify that the least restrictive alternative was not further incarceration.

It is worth considering, as well, that the criminal courts clearly believed that petitioner was entitled to bail *before* she was detained fourteen months ago. As I indicated during oral argument, it is extremely doubtful that any Magistrate Judge on this court would have remanded her to custody based on this record.

Perhaps the IJ would have come to a different decision had he heard all of the evidence that petitioner wanted to present. It is not his fault that she chose to receive an immediate decision and that she did not present testimony concerning her plan upon release at the outset of her case. In light of this record, it is a close question whether petitioner received the process that was due her. But the timing of her motion is such that the remedy is at hand: it is time for a new *Rodriguez* bond hearing that assesses her present dangerousness based on all the relevant evidence and determines whether the government has demonstrated, by clear and convincing evidence, that there are no less restrictive alternatives to detention.

While I am skeptical that the government can meet that burden, I disagree with petitioner's argument that the government is required to present new evidence of dangerousness. Petitioner functionally argues that, as a matter of law, evidence that is at least six months old cannot support a finding of present danger. That is certainly not true for violent crimes or certain other types of criminal behavior. But when it comes to non-violent crimes, especially those caused by addiction, the passage of time does make a difference, as does the availability of treatment options. It violates due process to keep someone in immigration detention for more than a year on the basis of dangerousness where the overriding reason is that a non-violent crime was committed as a result of that person's addiction and the individual has a viable plan for rehabilitation and compliance with pertinent conditions of release.

I ORDER that the next *Rodriguez* bond hearing to which petitioner is entitled be *completed*

prior to May 15, 2017.

## II. WHETHER THE CONTINUANCE DENIED PETITIONER STATUTORY AND CONSTITUTIONAL PROTECTIONS

Petitioner argues that she is entitled to habeas relief because she was not provided a full and fair opportunity to present evidence at her November 10, 2016 bond hearing. Prior to the bond hearing, petitioner's counsel informed the IJ that petitioner and her partner, Mr. Aguilar, intended to testify on her behalf. On the day of the hearing, the IJ ran out of time and informed petitioner that he would have to continue the hearing to December 13, 2016. At petitioner's request, the IJ stated that if she did not want to wait until December 13, he would be willing to issue a ruling then. Petitioner's counsel asked the IJ if he would weigh petitioner's declaration evidence the same as any oral testimony. After receiving assurances that he would, petitioner opted to receive a decision on her bond hearing that day instead of continuing the hearing until December 13, 2016.

Petitioner asserts that the IJ forced her to waive her due process rights to a full and fair hearing in order to avoid spending another month in detention. The government responds that the IJ did not force petitioner to waive her right to produce more evidence and instead gave her a clear option to present more evidence at a later date. Due to the tight schedule of the IJ and government counsel, the earliest possible date for a continued hearing was more than a month away. The government asserts that a one-month delay is not a due process violation and that petitioner made a voluntary choice to forgo presenting additional evidence.

As petitioner admits, "the IJ must have some flexibility to manage his schedule, and may need to enforce short continuances." Pet. at 24. IJs, just like district courts, "are accorded wide latitude in calendar management" and it is not the role of federal courts to "micromanage their scheduling decisions." *Morgan v. Gonzales*, 445 F.3d 549, 551 (2d Cir. 2006). By statute, IJs have express authorization to grant adjournments. *See* I C.F.R. § 1240.6 ("After the commencement of the hearing, the immigration judge may grant a reasonable adjournment either at her own instance or, for good cause shown, upon application by the respondent or the Service."). While delays may violate a detainee's due process rights, "there is no talismanic

number of years or months, after which due process is automatically violated." *Coe v. Thurman*, 922 F.2d 528, 532 (1990) (concluding, based on a four-factor test, that a four-year delay violated due process). Petitioner does not point to any case in which a one month delay constituted a due process violation.

If a continued bond hearing is necessary, it should be scheduled as quickly as possible. The IJ did so here; the one month delay did not violate petitioner's due process rights, although it would seem to be at the outer limit of a continuance since *Rodriguez* bond hearings are to be held every six months. Petitioner highlights that the IJ allowed the government to cross-examine petitioner for a long time even though he was aware that petitioner intended to present additional evidence. The IJ has discretion to manage his hearings, and he reasonably permitted the government (the party with the burden of proof) to cross-examine petitioner regarding her criminal history and substance abuse problems. There is no support for petitioner's argument that her evidence should have been given priority over the government's. As the record shows, the IJ was prepared to allow petitioner time to present her case; there just was not sufficient time that day. That the IJ did not have sufficient time to hear all of petitioner's evidence on the first day of her bond hearing does not demonstrate a due process violation.

An additional month of detention is no small thing and the court certainly understands petitioner's reluctance to wait for the continued hearing date in lieu of an immediate decision. But while the IJ's willingness to continue the hearing or give petitioner a decision that day required petitioner to make a difficult choice, the IJ did not force her to waive her right to "a full and fair hearing." The IJ made clear that petitioner could present additional evidence and testimony at the continued hearing. IJs have burgeoning caseloads, limited resources, and tight calendars. On occasion they will not have sufficient time to complete a bond hearing at a single session. This is what happened here. A delay in the continued hearing might constitute a due process violation under some circumstances, but not the ones presented here.

## CONCLUSION

Deprivation of liberty should be a rare circumstance for non-citizens in immigration detention, reserved only for those who are a threat to national security or poor bail risks. DHS

15

must prove the need for continued detention by clear and convincing evidence every six months. When the issue is dangerousness, the crime is non-violent, and criminal courts have indicated that, in their view, the least restrictive alternatives result in bail, it will be hard for the government to meet the clear and convincing standard, particularly with respect to someone who has already been in prolonged detention. In this case, because of the incomplete record before the IJ, I DENY the request for a temporary restraining order. However, I ORDER that petitioner's next *Rodriguez* bond hearing be *completed* prior to May 15, 2017.

**IT IS SO ORDERED.**

Dated: April 20, 2017

William H. Orrick
United States District Judge