UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAZMIN LILIANA ELIAS OBREGON,<br>Plaintiff,<br>v.<br>JEFFERSON B. SESSIONS, et al.,<br>Defendants. | Case No. 17-cv-01463-WHO<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE A SUPPLEMENTAL PETITION** |

**INTRODUCTION**

Petitioner Yazmin Elias seeks leave to file a supplemental habeas petition to add claims arising out of an Immigration Judge's ("IJ") bond determination at her May 11, 2017 *Rodriguez* bond hearing. *See* Dkt. No. 26 at 1. Petitioner asserts that the IJ disregarded my prior Order, DKt. No. 23, improperly concluded that she is a flight risk, and set an unconscionable bond, $25,000, much higher than petitioner's ability to pay. *Id.* She seeks leave to file her supplemental petition under Federal Rule of Civil Procedure 15(d), which permits a party to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. F. Civ. P. 15(d).

The government opposes the motion for leave, arguing that petitioner's habeas claims, including her supplemental claims, are moot because a community member paid her $25,000 bond and she is no longer in custody. Leave Oppo. at 4 (Dkt. No. 28). Because I conclude that petitioner's habeas claim is moot and that a supplemental petition would be futile, I DENY petitioner's motion for leave.

**BACKGROUND**

On March 17, 2017, petitioner Yazmin Elias filed a petition for habeas relief, challenging

the constitutionality of her extended civil immigration detention pending removal proceedings against her. Dkt. No. 1. She then sought a Temporary Restraining Order ("TRO"), seeking to secure her immediate release from custody. Dkt. No. 9. In her petition and TRO she argued that at her November, 2016, bond hearing, the IJ had inappropriately concluded that she was a danger to the community and denied bond in violation of her due process rights. *Id.* On April 20, 2017, I denied her request for immediate release, concluding that I could not rule on the motion as the record was incomplete. TRO Order at 1 (Dkt. No. 23). I ordered that petitioner's next *Rodriguez* bond hearing be completed prior to May 15, 2017. *Id.* at 16.

A subsequent bond hearing was held on May 11, 2017. Robinson Decl. ¶ 20 (Dkt. No. 28-1). Petitioner was represented by counsel at the hearing and both petitioner and the government produced additional evidence regarding whether further detention was appropriate and necessary. *See* Tseng Decl., Ex. A at 1:23-25; 10:18-25. (Dkt. No. 28-2). The government cross-examined petitioner and petitioner's counsel examined petitioner and her partner. *See id.* 15:8-20:22; 21:11-52:6; 52:8-54:18. In closing argument, the government argued that petitioner should remain detained without bond because she was a danger to the community and posed a flight risk. *See id.* at 55:4-56:3. Petitioner's counsel argued that petitioner was neither a danger to the community nor a flight risk and asserted that petitioner should be released on conditional parole or minimum bond, asserting that the IJ should consider petitioner's ability to pay in assessing any bond amount. *Id.* at 56:5-59:15. Petitioner's counsel admitted that they were "not aware of any binding precedent on this court" that required the IJ to consider petitioner's ability to pay in setting bond. *Id.* at 60:11-12.

At the end of the hearing, the IJ made an oral ruling and set bond of $25,000. In issuing his oral ruling he stated as follows:

> I find the department has met their burden by clear and convincing evidence that [petitioner] is a flight risk. Not to the degree that no bond is appropriate in this case. And, based on the totality of the circumstances in this case, considering the fact that she has a long criminal history, has violated the law many times, the appropriate bond I'm gonna have to set to ensure her future presence at all future court hearings is twenty-five thousand dollars.

Tseng Decl., Ex. A at 61:27-62:3.

2

1    Although the $25,000 bond was too high for petitioner and her family to pay, an unrelated
2    community member who attended petitioner's bond hearing offered to pay the bond for her.
3    Newman Decl., Ex. Z (Dkt. No. 25-3). With the help of this donation, petitioner posted bond and
4    was released from custody on May 12, 2017. Robinson Decl. ¶ 21. She appealed the IJ's decision
5    to the BIA on June 6, 2017 and the appeal is still pending. *Id.* ¶ 22.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under Rule 15(a)." *Paralyzed Veterans of America v. McPherson*, 2008 WL 4183981, at*25 (N.D. Cal. Sept. 9, 2008). When assessing whether leave is appropriate, courts generally consider five factors which are: "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. United States Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). However, futility may, on its own, justify denying a motion for leave to supplement and "futile amendments should not be permitted." *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

**DISCUSSION**

The question this motion raises is whether petitioner's motion for leave should be denied because any supplement to her petition would be futile. The government asserts that supplementing the petition will be futile because petitioner has been released from custody and her habeas claim is moot. It argues that petitioner is not suffering any collateral consequences from her original detention and that her claim does not fall under either the voluntary cessation or capable of repetition exceptions to mootness.

Petitioner responds that leave to supplement is appropriate because her new claims are

3

related to the original petition and to my prior Order. She asserts that she is suffering an independent injury as a result of the IJ's most recent bond determination, that she remains "in custody" for the purposes of seeking habeas relief, and that she can bring new habeas claims to address these injuries. Alternatively, she argues that her original habeas claim is not moot because she is suffering, or will suffer, collateral consequences from her original detention and because her habeas claim is capable of repetition but likely to evade review.

## I. WHETHER PETITIONER'S NEW CLAIMS ARE PROPER SUBJECTS OF HABEAS REVIEW

Petitioner argues that she is suffering an independent habeas injury as a result of the IJ's decision to set a $25,000 bond because the bond is excessively high in violation of her Eighth Amendment rights. *See Galen v. Cnty. of Los Angeles*, 447 F.3d 652 (9th Cir. 2007) (discussing the merits of an excessive bail claim brought under § 1983). While the imposition of excessive bail may be an independent injury, that does not mean it gives rise to a cognizable habeas claim. Habeas relief is limited to petitioners who seek relief from custody imposed "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a). Petitioner has already been released and seeks only a reduction or cancellation of her bond.

Petitioner contends that she is still "in custody" for the purposes of seeking habeas relief, noting that individuals who have been released from detention but are subject to "restraints not shared by the public generally" may still be "in custody" for the purposes of the habeas statute. *See Hensley v. Municipal Court*, 411 U.S. 345, 350 (1973) (petitioner who had been released on his own recognizance pending appeal was "in custody" because, as a condition of his release, he was required to appear "at all times and places as ordered by any court or magistrate of competent jurisdiction"). Petitioner asserts that she is "in custody" because she remains "subject to the conditions of the ICE bond, including that she may be re-detained at any time at ICE's discretion," and that "in certain circumstances, Ms. Elias and her family may be forced to surrender the amount of the bond." Newman Decl., Ex. Z ¶ 22, (Dkt. No. 25-3).

Although petitioner does not explain under what conditions she may be required to surrender the bond, the obligation to pay "[a] monetary fine is not a sufficient restraint on liberty

4

to meet the 'in custody' requirement." *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998). Therefore, the potential that petitioner or her family may have to surrender the bond amount is insufficient to render her "in custody."

While it appears that petitioner could be re-detained by ICE at any time, this "condition" is not related to petitioner's bond but applies to any alien released by ICE who remains subject to removal proceedings. *See* § 1226(b) (the Attorney General "at any time may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." Even if this restriction renders petitioner "in custody," it can only be redressed by challenging the merits of petitioner's removability. It is not redressible by challenging the IJ's bond determination. It would remain in place even if petitioner succeeded in having her bond reduced or changed to conditional parole. Habeas relief is not the appropriate means of challenging an excessive bail determination when the petitioner is not "in custody" as the result of that determination. *See Ewing v. Smelosky*, 2010 WL 4794030, at *8 n.17 (C.D. Cal. Oct 15, 2010) (petitioner failed to state a cognizable habeas claim challenging a bail order where petitioner was not "in custody as a result of the trial court's bail order, but rather as a result of the underlying criminal conviction.").

Petitioner is not "in custody" as a result of the IJ's bond determination. Therefore, her claim challenging that decision is not the proper subject of a habeas claim.[1]

## II. WHETHER PETITIONER'S ORIGINAL HABEAS CLAIM IS MOOT

Because petitioner's new excessive bail allegations do not appear to be independently cognizable as habeas claims, the question becomes whether they may be incorporated into her original habeas claim or whether that claim is moot. A claim for habeas relief becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "For a habeas petition to continue to present a live controversy after the petitioner's release . . . there must be some remaining 'collateral consequence' that may be

---

[1] Notably, petitioner does not cite any case indicating that a petitioner may seek habeas relief for an excessive bail claim even though she has been released from custody. On independent review, I have not been able to find any such case.

5

redressed by success on the petition." *See id.*, 523 U.S. at 7. A collateral consequence must present a "concrete and continuing injury." *Id.* at 14. Claims challenging the legality of an extended detention are generally mooted when the petitioner is released from detention. *Abdala v. I.N.S.*, 488 F.3d 1061, 1065 (9th Cir. 2007). "In such situations, the habeas petitions raised claims that were fully resolved by release from custody." *Id.*

### A. LIVE CONTROVERSY

Petitioner does not dispute that her original claim seeking relief from her extended civil detention is moot. At her most recent bond hearing, the IJ found that she was not a danger to the community and issued a bond to permit her release. She does not allege that she faces any continuing injury as a result of her prior bond hearing. Instead, she argues that the IJ's excessive bond determination at her most recent hearing constitutes a "continuing injury" such that her habeas claim still presents a live controversy. It is not clear that the IJ's more recent bond determination can fairly be characterized as a "continuing injury" of her initial bond hearing and detention. But, even assuming that it can be, the IJ's subsequent bond determination does not meet the standard for a "concrete and continuing injury" under *Spencer* and *Abdala*.

Petitioner argues that the IJ's May 11, bond determination constitutes a "concrete and continuing injury" because, if she is redetained by ICE in the future, another IJ is likely to rely on the $25,000 bond in setting a similar or higher bond amount. The Hon. William Alsup rejected a similar argument in *Domingo-Jimenez v. Lynch*, No. 16-cv-5431-WHA, 2017 WL 235194, at *1 (N.D. Cal. Jan 19, 2017), finding that a petitioner's fear that an adverse bond determination would be used against him at subsequent proceedings was too speculative to constitute a "concrete and continuing injury" as required under *Spencer* and *Abdala*. In *Domingo-Jimenez*, a petitioner brought a habeas claim challenging his civil immigration detention in which he asserted that an IJ improperly relied on a police report in finding that he was a danger to the community and denying bond. *Id.* at *2. Although he was subsequently released on $5,000 bond, Domingo-Jimenez asserted that he faced a continuing injury as a result of his original bond determination because the government might rely on that determination at his asylum proceedings or at future bond determinations to his detriment. *Id.* at *3. Judge Alsup rejected this argument, concluding that

6

petitioner's fear that the police report would resurface at a future bond redetermination was too speculative because such a proceeding would only occur "if petitioner is redetained by ICE" and even then it was not "certain or even probable that the police report would be relied on by the government in any such bond proceeding, much less relied on by the immigration judge." *Id.*

The facts here bear substantial similarities to those in *Domingo-Jimenez*. Petitioner asserts that the IJ's $25,000 bond determination results in a continuing injury because she could be redetained at ICE's discretion and "a future IJ would likely rely on this $25,000 bond to impose a higher bond or deny bond in the future." As in *Domingo-Jimenez*, petitioner's fears are too speculative to constitute a continuing injury under *Spencer* and *Abdala* because petitioner cannot demonstrate that this potential harm is more than a "possibility rather than a certainty or even a probability." *Spencer*, 523 U.S. at 14. While ICE currently has statutory authority to redetain her, she points to no facts indicating that it is likely to do so. Instead, she highlights that she has an expedited asylum and U-visa application pending and may soon obtain legal status, at which point ICE would no longer have discretion to detain her. Reply at 10. It does not appear certain or probable that she will be redetained. Further, her suggestion that if she were detained a future IJ would likely rely on the $25,000 bond determination to impose a similar bond is highly speculative and assumes that a future IJ will not make an independent evaluation of petitioner's flight risk or dangerousness as required by due process. Petitioner has failed to demonstrate that she is facing a "concrete and continuing injury" as a result of the IJ's $25,000 bond determination. Her fear that this decision will be used against her in the future is too speculative to demonstrate that she is suffering a present and concrete injury under *Abdala* and *Spencer*.

Petitioner has failed to demonstrate that her habeas claim presents a live controversy or that she is suffering any "concrete and continuing injury" as a result of any improper bond determination. Her habeas claim is moot.

### B. THE CAPABLE OF REPETITION AND LIKELY TO EVADE REVIEW EXCEPTION

Petitioner asserts that, even if her claims are moot, I should permit them to proceed because they fall under the "capable of repetition and likely to evade review" exception to

mootness. Reply at 8. Petitioner has failed to demonstrate that this narrow exception applies to her claims.

The capable of repetition exception permits a court to consider a habeas claim even if the claim has been rendered moot. This exception is limited "to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 983 (9th Cir. 2011). To satisfy this exception, a petitioner must show that it is probable that, in the future, she will be subjected to the same type of controversy at the hands of the same parties, *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985), and that the underlying action is "almost certain to run its course before" a federal district court of appeals can review it, *Hubbart v. Knapp*, 379 F.3d 773, 778 (9th Cir. 2004).

Petitioner asserts that she meets the first prong of this exception and is likely to be "subjected to the same type of action again" because ICE has discretion to redetain her at any time and so could arrest her and subject her to another, allegedly flawed, bond hearing. Petitioner has not demonstrated that this outcome is probable. Beyond showing that ICE has statutory discretion to detain her, petitioner has not pointed to any facts indicating that ICE is likely to exercise this discretion. Further, she has indicated that she may soon acquire substantive immigration relief that would terminate ICE's authority to redetain her under § 1226(b). Petitioner has not demonstrated that it is probable that she will face this type of action again at the hands of the defendants and does not meet the first prong of the exception.

Petitioner also does not meet the second prong. She asserts that her claims are "likely to evade review" because she had a pending asylum case and a U-visa application that has been expedited, such that if she was re-detained and subjected to another bond hearing, it is "highly likely that Ms. Elias would succeed in obtaining relief, and have her bond cancelled, before this court had a chance to review the agency's decision again." Reply at 10. Petitioner argues that, because she is likely to have her bond cancelled before this court can review any subsequent bond hearings, it should rush to review the issue now. This is not a convincing argument. The capable

8

of repetition but likely to evade review exception is intended to provide some remedy to a petitioner or plaintiff at risk of suffering from repeated abuses, but who may never have any effective recourse because the type of action or abuse is inherently short in duration. It is not meant to incentivize a court to hear a claim that might "evade review" because the petitioner is likely to resolve the issue quickly, in her favor, without the need for judicial intervention. Petitioner has failed to demonstrate that her claims are likely to evade review within the meaning of this exception.

### III. PRUDENTIAL CONSIDERATIONS ALSO JUSTIFY DECLINING REVIEW

Even if petitioner's claims were not moot, prudential considerations would counsel against hearing them now. Although § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus . . . we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001).

The purpose of the administrative exhaustion requirement is threefold:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990) (citation omitted). The administrative and judicial process for challenging a civil immigration detention determination under § 1226(a) is as follows: "If [the alien is] dissatisfied with the IJ's bond determination, they may file an administrative appeal so that the necessity of detention can be reviewed by . . . the BIA. If they remain dissatisfied, they may file a petition for habeas corpus in the district court. They may then appeal to [the Ninth Circuit]." *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011) (internal quotation marks omitted).

There is no dispute that petitioner has not exhausted her administrative remedies. Although she has filed an appeal with the BIA, she has not yet received a determination on that appeal. Petitioner asserts that I should nevertheless consider her habeas petition because the IJ's

9

1    recent bond determination contravened my prior Order and I should therefore waive the prudential

2    exhaustion requirement. This argument is not persuasive.

3        I have substantial doubts that petitioner poses a flight risk and that the $25,000 bond was necessary to ensure her appearance. But I did not order the IJ to reach any particular decision with regard to petitioner's subsequent bond hearing. Instead, I ordered that the government provide petitioner with an adequate bond hearing, as required by *Rodriguez*, by May 15, 2017. TRO Order at 16. The government did so. The IJ reviewed the evidence presented, issued a new bond determination, and set bond at $25,000. Although the $25,000 bond seems high, IJs have considerable discretion in making bond determinations. Most importantly, petitioner has now been released on bond and is no longer detained. Petitioner's primary injury, her extended detention, has been resolved.

    Further, petitioner's own arguments counsel against waiving the exhaustion requirement. Petitioner asserts that, due to her expedited asylum and U-visa applications, she is "highly likely" to obtain immigration relief and have her bond cancelled. *See* Reply at 10. One of the primary purposes of the exhaustion requirement is to allow the agency to correct its own mistakes and *to preclude the need for judicial review*. *Montes*, 919 F.2d at 537 (citation omitted) (emphasis added). Where petitioner's claims may be resolved without the need for judicial or administrative intervention, waiving the administrative exhaustion requirement is even less appropriate.

## CONCLUSION

    Petitioner has failed to demonstrate that her challenge to the IJ's bond determination is the proper subject of a habeas claim where she is no longer in detention or "in custody" as a result of that bond. Further, she has failed to demonstrate that there are any collateral consequences or continuing injuries such that her original habeas petition remains a "live controversy." And she has failed to demonstrate that her claim is capable of repetition but likely to evade review. As a result, it appears that petitioner's habeas claim is moot, and would be moot, even if she were to supplement it. Accordingly, petitioner's motion for leave to file a supplemental petition is

DENIED as such amendment would be futile.

Given my conclusion that petitioner's claims are moot, petitioner is ORDERED TO SHOW CAUSE why her claims should not be dismissed and this case administratively closed. Petitioner may file a brief of no more than 10 pages within 14 days of this Order, explaining why this case should not be closed.

**IT IS SO ORDERED.**

Dated: August 14, 2017

William H. Orrick
United States District Judge